UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOY ANNEXSTEIN,

                           Plaintiff,

                        - against -

VINCENT INZERILLI, VIMAG PROPERTIES,
LLC, VMHC PROPERTIES, LLC,

                         Defendants.
----------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 10-3655 (ADS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

### I.    PRELIMINARY STATEMENT

Plaintiff Joy Annexstein commenced this personal injury action against Defendants Vincent Inzerilli, VIMAG Properties, LLC, and VMHC Properties, LLC ("Defendants") arising out of a slip and fall at an apartment building owned by the Defendants. DE 1. Plaintiff moved for a default judgment against the Defendants after they failed to answer or otherwise move in response to the Complaint. DE 2. Judge Spatt entered a default judgment against the Defendants and referred this matter to me for an inquest to determine and recommend what damages, if any, are appropriate, including attorney's fees and costs. DE 4.

### II.    BACKGROUND

According to the Complaint, Plaintiff lived on the second floor of an apartment building located at 920 North 5th Street, New Hyde Park, New York which was owned and operated by Defendants. On August 15, 2007, Plaintiff alleges that she "was caused to trip/slip and fall" at the apartment building due to a "defective, faulty, damaged, broken down, uneven, malfunctioning, out of order, inoperative, defective and/or malfunctioning floors, landing, and

staircase . . . ." Compl. ¶ 52. Plaintiff further alleges that she injured her cervical spine in the fall and that the fall was caused by Defendants' negligence. *Id*.

After Judge Spatt granted Plaintiff's motion for a default judgment, this Court issued an Order directing Plaintiff to submit documentation to support her claim for damages by May 31, 2011. The documentation was to include an affidavit from Plaintiff, her medical records, support for her lost wages claim, contemporaneous billing records for the attorney's fee claim, and any other relevant material. DE 5. The Court advised Plaintiff that no damages could be awarded without supporting documentation. *Id.* Counsel for Plaintiff was granted numerous extensions and concessions to enable her to comply with this directive, including the following:

- On May 19, 2011, counsel for Plaintiff requested to have Plaintiff's medical records subpoenaed directly to the Court to alleviate duplication costs. Counsel further requested an extension of time to July 14, 2011 to submit the requested documents. DE 6. The Court granted the request for an extension and sought further clarification regarding the request to have records subpoenaed directly to the Court since Plaintiff would still need to serve the records on Defendants. DE 7. Thereafter, Plaintiff requested a telephone conference and a conference was scheduled. *See* DE 8, 9. At the telephone conference, the Court agreed to "so order" the subpoenas for the medical records and granted Plaintiff a further extension of the time to submit supporting documentation. DE 11.

- On September 15, 2011, four days before the supporting documents were due, Plaintiff again requested an extension of time. The Court initially denied the request based on Plaintiff's failure to assert and support a claim of good cause for the delay. *See* DE 16; Electronic Order dated September 16, 2011. The Court later granted an extension of the deadline to October 6, 2011 after Plaintiff's counsel submitted an explanation for the continued delay, but denied Plaintiff's request to be relieved of her obligation to serve Defendants with a copy of the medical records due to the expense. *See* DE 18; Electronic Order dated September 19, 2011.

- Once again, on October 4, 2011, Plaintiff submitted a request for an extension of the deadline to submit documents due to continued difficulty securing the requested documentation from the medical sources. DE 19. The Court granted an extension of the deadline to November 28, 2011 and scheduled a telephone

conference for October 24, 2011 to discuss the reasons for the six-month delay. DE 20, 22. At that October 24, 2011 conference, the Court advised counsel for Plaintiff that, due to her professed difficulties obtaining affidavits from the Plaintiff's doctors, the Court would not require doctor affidavits in support of Plaintiff's request for medical expenses and "the submission of an attorney affirmation attaching certified copies of the medical records along with copies of the medical bills would be sufficient." *See* DE 22. Plaintiff's counsel also informed the Court that the only support she intended to provide for Plaintiff's pain and suffering damages was an affidavit from the Plaintiff. The Court advised counsel that pain and suffering damages were typically proven through expert testimony and that any claim for pain and suffering damages "must be supported by relevant case law as well as appropriate evidence." *Id*.

Ultimately, in late November 2011, Plaintiff's counsel submitted the final documents in support of Plaintiff's claim for damages.

## III. APPLICABLE STANDARD

A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true. *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)), *cert. denied*, 506 U.S. 1080 (1993)); *BMG Music v. Pena*, No. 05-CV-2310, 2007 WL 2089367, at *2 (E.D.N.Y. July 19, 2007).

A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability. *See Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995)). The only question remaining, then, is whether Plaintiff has provided adequate support for the relief she seeks. *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. The

moving party need only prove "that the compensation sought relate to the damages that naturally flow from the injuries pleaded." *Id.* at 159.

In determining damages not susceptible to simple mathematical calculations, Federal Rule 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich and Co., Inc.,* 951 F.2d 504, 508 (2d Cir. 1989). The moving party is entitled to all reasonable inferences from the evidence it offers. *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981).

**IV.  DAMAGES**

Plaintiff fell down a flight of stairs in her apartment building on August 15, 2007 and sustained serious injury to her cervical spine. Plaintiff seeks to recover damages in the following amounts: $186,808.84 for medical expenses; $21,000.00 for attorney's fees; and $5,000,000.00 for pain and suffering. DE 27. Plaintiff has submitted the following documents in support of this request: (A) a letter from Plaintiff's attorney, Milene Mansouri, explaining the damages sought and the legal basis for the claimed damages [DE 27] (the "Mansouri Letter"); (B) the October 25, 2011 Affidavit of Dr. Michael Lefkowitz ("Lefkowitz Aff."), Plaintiff's treating neurosurgeon, outlining Plaintiff's injuries; (C) the September 29, 2011 Affidavit of Plaintiff Joy Annexstein detailing her injury and its effects ("Pl's. Aff."); and (D) various unauthenticated documents that are purportedly medical records from the North Shore University Hospital. With the exception of the Mansouri Letter, the remainder of the documents were filed under seal

pursuant to the Court Order. DE 17.[1] The Court finds Plaintiff's submissions to be sufficient evidence to form the basis for an award of damages. The following discussion assesses the amount of damages to which Plaintiff is entitled based upon the information set forth in Plaintiff's submissions which have now been evaluated by the Court.

   A.   **Medical Expenses**

Plaintiff seeks to recover the $40,500[2] she states that she owes Dr. Lefkowitz and the $140,308.84 she purportedly owes North Shore University Hospital. Plaintiff also seeks $6,000 for "out of pocket expenses for the home health aide." DE 18. Medical expenses are recoverable in personal injury actions. *See Braccia v. D'Blass Corp.*, No. 08-CV-8927, 2011 WL 2848146, at *4 (E.D.N.Y. June 13, 2011), *adopted by* 2011 WL 2848202 (E.D.N.Y. July 11, 2011); Restatement (Second) of Torts § 924. Thus, the Court need only ensure that Plaintiff has submitted sufficient evidence to substantiate the amounts sought.

---

[1]   The version of the Mansouri Letter initially filed redacted the amounts of damages claimed. DE 25. This letter was rejected because counsel did not redact sensitive and privileged medical information as directed and the amount of damages at issue is not protectible information. DE 26. Counsel was directed to re-submit the letter and was reminded of her obligations with respect to her client's personal information. *Id.* When counsel re-submitted the letter, however, she did not redact any of Plaintiff's sensitive medical information.

   Plaintiff was also granted permission to file certain documents in support of her damages claim under seal as they contained sensitive information. DE 14. Having reviewed the submissions, the Court finds that some of the information is not confidential and should not have been filed under seal. Accordingly, the Court directs the Clerk's office to unseal paragraphs one (1) through three (3) of the Lefkowitz Affidavit as well as paragraphs one (1) through four (4) and paragraphs ten (10) through twenty-one (21) of Plaintiff's Affidavit. The remainder of the affidavits and records submitted under seal contain confidential medical information and may remain under seal. References to that information have been redacted from the public version of this Order. The redacted portions will be filed on ECF under seal.

[2]   Plaintiff's submission states that she is seeking $40.500.00, but the Court assumes she is seeking $40,500.00.

In his Affidavit, Dr. Lefkowitz states that Plaintiff owes him $40,500 for his treatment of her injuries, including injury to her cervical spine which required surgery at North Shore University Hospital. Lefkowitz Aff. ¶ 4. Dr. Lefkowtiz is a neurosurgeon licensed by the state of New York who is affiliated with Long Island Neurological Associates, P.C. in New Hyde Park. *Id*. ¶ 1. He further states that he was not paid by any health insurance company for his services since Plaintiff did not have any health insurance at the time of the accident. Dr. Lefkowitz has a lien for the amount Plaintiff owes him. *Id*. ¶ 7. Attached to the Lefkowitz Affidavit is a bill for $40,500 for services rendered by Dr. Lefkowtiz to the Plaintiff, including surgery performed (anterior cervical diskectomies and fusions) and treatment of the Plaintiff in 2007. Those charges are authenticated by Dr. Lefkowitz. Thus, the Court finds that Plaintiff is entitled to $40,500 for services rendered by Dr. Lefkowitz.

Plaintiff also seeks $6,000 to cover the expense of hiring a home health aide. In her affidavit, Plaintiff attests that she hired a home health aide to assist with her recovery after the accident. Plaintiff states that her treating doctors prescribed physical therapy and a home health care aide for her. She paid the aide $130 per day from the time of her hospitalization until an unspecified date in October 2007, for a total of approximately $6000. This charge was not covered by any insurance. Pl's. Aff. ¶¶ 9, 18. The Court finds that the necessity for a home health aide is apparent based on the serious injuries and medical treatment described by Dr. Lefkowitz (as well as Plaintiff's two-week stay in the hospital, a portion of which was spent in the ICU). However, the Plaintiff has not provided a bill from any agency providing such services, or cancelled checks, credit card bills or any other form of documentation to show these payments were being made to a home health aide. Therefore, I am respectfully recommending to

Judge Spatt that the Plaintiff be given fourteen (14) days from the date of this Report and Recommendation to file whatever documentation she has which reflects the payments to the home health aide if she still wishes to pursue reimbursement for these out-of-pocket expenses.

The final medical expense Plaintiff seeks to recover is the $140,380.84 owed to North Shore University Hospital for Plaintiff's two-week stay and treatment there. In support of this claim, Plaintiff submits an undated, uncertified page with a letterhead purportedly of North Shore University Hospital stating "Account Balance: $140,308.84" with some charges following. Plaintiff's Affidavit also states that she has "been advised that [she] owe[s] North Shore University Hospital $140.308.84 for the two weeks of my hospitalization following my accident at issue." Pl's. Aff. ¶ 19.

The Court finds that there is not sufficient evidence at this time to award damages for the expenses incurred at North Shore University Hospital. Counsel for Plaintiff was specifically advised that, although the Court would not require doctor affirmations authenticating the bills at issue in this case given counsel's difficulty securing these, certified copies of the hospital bill had to be provided. *See* DE 22. Despite this clear directive, counsel did not submit a certified copy of the North Shore University Hospital bill, nor did Plaintiff submit an affirmation attesting to the accuracy of the bills. Instead, counsel submitted an undated and uncertified summary statement showing total charges of $140,380.84. By virtue of the haphazard manner in which the documents were submitted to the Court, including no affirmation from Plaintiff's counsel herself, it is nearly impossible to tell how any of the North Shore University Hospital documents (e.g., progress notes, doctor's orders) came into the possession of counsel since neither Dr. Lefkowtiz nor the Plaintiff address these items in their sworn statements.

7

The Federal Rules of Evidence require the proponent of evidence to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The failure to do so will result in a Court rejecting the evidence. *See House v. Kent Worldwide Machine Works, Inc.*, 359 Fed. Appx. 206, 207 (2d Cir. Jan. 4, 2010) (describing failure to submit affidavit asserting that documents were what they purported to be as "inexcusable"); *Gissinger v. Yung*, No. 04-CV-534, 2007 WL 228153, at *3 (E.D.N.Y. July 31, 2007) (refusing to admit unauthenticated medical records). Insisting that Plaintiff authenticate the North Shore University Hospital bill is not simply a technicality in this case since the Plaintiff's own statement raises a question about the accuracy of the amount claimed by Plaintiff for the hospital's services. Specifically, Plaintiff states that "she has been advised" that she owes the amount sought. This statement raises some uncertainty as to whether she actually owes North Shore University $140,308.84. Pl's. Aff. ¶ 19.

Notably, Plaintiff has not submitted any cover letters, correspondence or bills sent to her reflecting that she owes this amount. Moreover, the Court is also concerned by the fact that the Mansouri Letter references a North Shore University Hospital lien in the amount of $140,308.84, but counsel has not provided a copy of any lien documents. Finally, the account statement submitted is undated and the Court is unable to ascertain if it reflects the amount actually charged to Plaintiff or if a lesser amount was charged after the hospital learned that Plaintiff did not have insurance as she notes. Significantly, the Court also points out that certain records submitted by Plaintiff reflect that she does have a health insurance policy with Anthem Health. This also raises concerns about the accuracy of the amount Plaintiff asserts she owes to North Shore. Plaintiff has provided no certified billing statements from North Shore or dunning notices or anything

similar.  In sum, Plaintiff has not met her burden of proving, based upon the lack of reasonable supporting documentation, that she incurred $140,308.84 in medical expenses for the services of North Shore University Hospital.  The deficiencies in Plaintiff's submissions are particularly unfortunate given the multiple extensions of time afforded Plaintiff's counsel to provide the necessary support for her claim.

For the foregoing reasons, the Court recommends that Plaintiff be awarded $40,500 at this time in medical costs for the documented expenses she incurred for treatment by Dr. Lefkowitz.  I further recommend that Plaintiff be granted leave to renew her motion for the $140,308.84 she states she owes North Shore University Hospital if she files a certified bill for services/amounts still owed to North Shore University Hospital for her two-week hospitalization in 2007, so long as that certified document is filed within fourteen (14) days of the date of this Report and Recommendation.

### B.    Pain and Suffering

Plaintiff seeks $5,000,000 in past and future pain and suffering damages.  Although the paragraph of the Mansouri Letter summarizing the damages Plaintiff seeks only requests damages for past pain and suffering, other portions of the letter, as well as Plaintiff's Affidavit, reference a claim for future pain and suffering damages.  Since the Mansouri Letter does not specify the amount Plaintiff seeks for future pain and suffering, the Court assumes that $5,000,000 is the amount claimed collectively for both past and future pain and suffering.

In support of her pain and suffering claim, Plaintiff submitted her Affidavit, the Lefkowitz Affidavit, and various unauthenticated medical records of North Shore University Hospital – the latter of which the Court cannot rely on at this juncture for the reasons stated

above.  The Mansouri Letter also contains a description of Plaintiff's pain and suffering, but the Court is unable to consider this description since the Mansouri Letter is not sworn to, does not appear to be based on personal knowledge, and does not cite to any evidence in the record.

However, the Lefkowtiz Affidavit is helpful in this regard.  Dr. Lefkowtiz describes the medical treatment he provided to the Plaintiff as well as the surgery he performed on her.  In particular, Dr. Lefkowitz states the following:

REDACTED

10

REDACTED

*Id.* ¶¶ 4-6.

Plaintiff describes in her own Affidavit the pain and suffering she experienced at the time of the injury and subsequent to the injury. She explains that after the fall she was hospitalized for two weeks and describes the incident as "one of the most painful experiences in [her] life." Pl's. Aff. ¶ 5. As an example, Plaintiff states that:

REDACTED

*Id*. ¶ 6. Plaintiff further asserts that her "doctors have advised [her] that these injuries are permanent, and the screws will remain in [her] body for the rest of [her] life." *Id.* ¶¶ 7, 17. Following her release from the hospital, Plaintiff states that:

> 10. I had excruciating pain throughout my body. This was a very difficult time in my life, and I was quite miserable. I had

pain in my neck and back, constant dizziness and throbbing headaches, pain radiating from my shoulders to my hands and pain going down to my legs. I had a very difficult time moving my neck forward, back or side to side due to the metal screws and rods placed in there. In short, I had a difficult time functioning and performing my daily activities.

11. Additionally, as a result of the accident and my pain, I had a very difficult time driving, going grocery shopping, lifting an object, cooking, bathing, and putting my clothes on.

12. Due to the increased sensation and mobility, pain and nerve damage that I received in this accident, it was difficult for me to grasp objects, carry anything, or bend down to pick up an object. Due to traumatic and extensive damage to my cervical cord, spinal cord and nerve damage, I developed a problem with my gait which effected my walking. I also experienced extreme numbness and weakness in my upper body including my arms and pain radiating down my legs which effected my walking. . . .

14. I have a scar on my neck as a result of my accident and surgery. I have been suffering from pain as a result of my surgery and hospitalization as a result of my accident and defendants' negligence. My daily functions have been very difficult for me and my pain has been getting worse. These were very difficult times in my life. To date, I still have pain in my neck and back, constant dizziness and throbbing headaches, pain radiating from my shoulders to my hands and pain going down to my legs. I still have a very difficult time moving my neck forward, back or side to side due to the metal screws and rods placed in there.

*Id*. ¶¶ 10, 11, 12, 14. Plaintiff states that she continues to treat with doctors on an as needed basis which is currently "every couple of months and whenever my pain is unbearable. *Id*. ¶ 20.

Plaintiff has presented sufficient evidence to support an award of damages for pain and suffering. Based on the affidavits submitted by the Plaintiff and Dr. Lefkowitz, the Court may reasonably infer that Plaintiff suffered a serious injury and experienced pain and suffering. *See*

*House*, 359 Fed. Appx. 206 at 207 (holding that affidavits of plaintiff and treating physician provided a sufficient basis for awarding pain and suffering damages). Dr. Lefkowitz's affidavit also provides a sufficient basis for the Court to conclude that the injuries suffered were permanent and that Plaintiff will experience significant and permanent future pain and suffering. Here, the Court notes Dr. Lefkowitz's assessment:

REDACTED

*Id.* ¶ 6.

New York courts recognize that pain and suffering damages, which are designed to restore the aggrieved party to the position she was in prior to the injury, are difficult to calculate and therefore it is appropriate to look at what other fact-finders have determined to be reasonable compensation. *See Gissinger*, 2007 WL 228153, at *6; *Hinckley v. Westchester Rubbish, Inc.*, No. 04-CV-189, 2006 WL 2849841, at *4 (S.D.N.Y. Oct. 2, 2006); *Gottesman v. Ashdod*, No. 00-CV-5139, 2003 WL 21383819, at *2 (S.D.N.Y. June 11, 2003).[3] "Although comparable approved awards from similar cases serve as guideposts for determining reasonable compensation under New York law, because each plaintiff's factual circumstances differ, . . . pain and suffering claims will be unique, thereby limiting the precedential value of similar

---

[3] In a case based on diversity jurisdiction such as this one, state law governs damages. *See Gissinger*, 2007 WL 228153, at *6 (citing *Consorti v. Armstrong World Indus., Inc.*, 103 F. 3d 2, 4 (2d Cir. 1995)).

cases." *Gottesman*, 2003 WL 21383819, at *2 (citing *Martell v. Boardwalk Ents.*, 748 F.2d 740, 750 (2d Cir. 1984)).

As to the amount of pain and suffering damages Plaintiff is entitled to, the Court finds that $1,000,000 for past pain and suffering and $1,000,000 for future pain and suffering is an appropriate award. This amount is in line with what other fact finders have found to be reasonable compensation for similar injuries. *See Rivera v. Silver*, No. 306231/2008, 2011 WL 2783546 (N.Y. Sup. Ct. Bronx Co April 27, 2011) ($1,500,000 verdict – $500,000 for past pain and suffering and $1,000,000 for 20 years of future pain and suffering – in case involving fusion of C5-C6 vertebrae); *Fesel v. Bryant*, No. 14220/07, 2010 WL 1347241 (Sup. Ct. Bronx Co. Feb. 23, 2010) ($3,330,023 verdict covering pain and suffering, medical expenses, and lost earnings in case involving impingement of the C5-6 nerve root necessitating fusion surgery where plaintiff claimed pain); *D'Anna v. Metropolitan Transit Auth. York Hunter Capitol Constr.*, No. 27726/00, 2007 WL 2491539 (N.Y. Sup. Ct. Queens Co. July 2, 2007) ($3.82 million verdict plus $1.7 million in interest, consisting of pain and suffering and lost earnings for case involving herniated L5-S1 disc and cervical disc as well as knee and shoulder injuries); *Johnson v. NYCTA*, No. 7582/99, 2007 WL 1650248 (N.Y. Sup. Ct. Bronx Co. May 16, 2007) ($2.4 million verdict for pain and suffering and lost wages in case involving disc herniation at C5-6 level and C6 nerve root impingement). This amount is also within the range of some of the cases cited by Plaintiff. *See* Mansouri Letter at 2-3 (citing *Pukhovich v. New York City Police Dep't*, No. 793/09 (N.Y. Sup. Ct. Queens Co. Oct. 7, 2010) ($1,500,000 settlement for accident involving ankle, knee, neck, and spine injuries); *Trombetta v. City of New York*, No. 08-CV-2896, 2009 WL 7196328

(E.D.N.Y. Dec. 31, 2009) ($813,481 verdict in case involving shoulder, arm, neck, lower back, and psychological injuries)).

In determining the amount of future pain and suffering damages, the Court considered Plaintiff's projected life span through reference to actuarial tables as the Court is required to do given its finding that Plaintiff's injuries are permanent. *House*, 359 Fed. Appx. at 209; *Braccia*, 2011 WL 2848146, at *4 (citing New York Pattern Jury Instructions Civil § 2:280 (2011)). Although Plaintiff's counsel did not provide the Court with any actuarial tables, the Court has reviewed the most recent actuarial tables available from the United States Department of Health and Human Services, the National Vital Statistics Report, which is a self-authenticating document pursuant to Federal Rule of Evidence 901. *See House*, 359 Fed. Appx. at 209. The National Vital Statistics Report reflects that Plaintiff, who is sixty-three (63) years old according to the physician billing statement authenticated by Dr. Lefkowitz and attached to his Affidavit, has a life expectancy of 21.5 years. *See* National Vital Statistics Reports, United States Life Tables, 2007, Vol. 59, No. 9, Table 3, published September 28, 2011, available at http://www.cdc.gov/nchs/data/nvsr/nvsr59/- nvsr59_09.pdf. Thus, an award of $1,000,000 for future pain and suffering breaks down to approximately $46,512 per year which this Court finds to be reasonable given the severity of the injury suffered.

The Court recognizes that the amount recommended is significantly lower than the amount requested by the Plaintiff. The Plaintiff, however, has not demonstrated that an award of $5,000,000 is appropriate in this case. Although pain and suffering damages are not easily susceptible to mathematical calculations, an award should reflect an attempt to restore a plaintiff to the position he or she was in prior to the injury. *See Gottesman*, 2003 WL 21383819, at *2.

Here, Plaintiff's counsel does not identify any components of the $5,000,000 figure, how this number was reached, nor why that amount is necessary to restore the Plaintiff to the position she was in prior to the incident.

The Court notes that it did not rely on Plaintiff's medical/hospital records in determining the amount of pain and suffering damages available because they were not properly authenticated. However, even if the Court were to consider Plaintiff's medical records, they would not support the higher damages award Plaintiff seeks. First, medical records are not particularly helpful in assessing pain and suffering as they generally reflect treatment and diagnoses and do not purport to explain Plaintiff's pain and suffering. *See Braccia*, 2011 WL 2848146, at *8 (noting limited value of medical records for determining pain and suffering). This is particularly true in this case where Plaintiff did not explain the significance of the records submitted. Moreover, in many instances, the medical records submitted would actually seem to detract from Plaintiff's pain and suffering claim.

REDACTED

For all of the foregoing reasons, the Court recommends that Plaintiff be awarded $1,000,000 for past pain and suffering and $1,000,000 for future pain and suffering.

### D. Attorney's Fees and Costs

Plaintiff also requests reimbursement of $21,000 in attorney's fees incurred in this action. Mansouri Letter at 3-4. The Court must follow state law in regard to the award of attorney's

fees. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 259 n.31, 95 S. Ct. 1612 (1975) ("state law denying the right to attorney's fees or giving right thereto, which reflects a substantial policy of the state, should be followed") (internal quotations omitted). The Court notes that Plaintiff did not submit proper documentation such as itemized billing records to support a fee award. Aside from the lack of contemporaneous billing records, the Court notes that "New York follows the 'American rule' on the award of attorneys' fees, meaning that 'attorneys' fees and disbursements are incidents of litigation and the prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties or by statute or court rule.'" *Versatile Housewares & Gardening Sys., Inc. v. Thill Logistics, Inc.*, __ F. Supp. 2d __ , No. 09-CV-10182, 2011 WL 2566061, at *9 (S.D.N.Y. June 29, 2011) (describing various exceptions to the American Rule); *accord Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 741, 756 (S.D.N.Y. 2011). Plaintiff has not identified any exception to the American Rule applicable to this straightforward personal injury action, despite the Court's specific direction to provide the basis for an award of attorney's fees, *see* DE 5, and the Court is not aware of any such exceptions. Thus, the Court has no alternative but to recommend to Judge Spatt that no attorney's fees be awarded.

V.  **CONCLUSION**

Based upon the foregoing information, I respectfully recommend to Judge Spatt that Plaintiff be awarded damages as follows: (i) $46,500 for medical expenses; (ii) $1,000,000 for past pain and suffering; and (iii) $1,000,000 for future pain and suffering, for a total award of $2,046,500. Plaintiff is also entitled to post-judgment interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the

17

Federal Reserve System for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a). Moreover, I respectfully recommend that if Plaintiff's counsel can provide within fourteen (14) days, the certified bill from the North Shore University Hospital and proof of Plaintiff's payments to a home health aide, that those amounts be included as damages awarded in the final judgment.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Arthur D. Spatt, and to the chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Spatt prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 188 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**Counsel for the Plaintiff is directed to serve a copy of this Report and Recommendation on the Defendants forthwith by regular mail and overnight mail and to file proof of service on ECF no later than Monday, February 20, 2012.**

                                                  **SO ORDERED.**

Dated: Central Islip, New York
       February 16, 2012

                                                    /s/ A. Kathleen Tomlinson
                                                    A. KATHLEEN TOMLINSON
                                                    U.S. Magistrate Judge